IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VICTOR CALDERON,

                          Plaintiff,

                                                    Civ. Action No.
          vs.                                       9:06-CV-0963 (GTS/DEP)

SANDRA A. WHEELER, *et al.,*

                          Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

VICTOR CALDERON, *Pro Se*
02-R-5806
Upstate Correctional Facility
PO Box 2001
309 Barehill Road
Malone, NY 12953

FOR DEFENDANT WHEELER:

THUILLEZ, FORD LAW FIRM          DONALD P. FORD, JR., ESQ.
20 Corporate Woods Boulevard
6th Floor
Albany , NY 12211-1715

FOR REMAINING DEFENDANTS:

HON. ANDREW M. CUOMO             KRISTA A. ROCK, ESQ.
Attorney General of the State    ASST. ATTORNEY GENERAL
of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Victor Calderon, a prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 complaining of the deprivation of his civil rights.  Although his complaint makes passing reference to other matters, plaintiff asserts principally that the defendants, medical officials at two of the prison facilities in which he was housed at the relevant times, were deliberately indifferent to his medical needs, including those arising from a buttock cyst and a condition causing him to experience low testosterone levels, and by their actions subjected him to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.  As relief, plaintiff's complaint seeks recovery of damages in the amount of $50,000 against each of the five named defendants.

Currently pending before the court are two separate motions for summary judgment.  In the first defendant Sandra A. Wheeler, a nurse practitioner employed at the Coxsackie Correctional Facility ("Coxsackie"), argues that based upon the record now before the court plaintiff's medical indifference claims against her are deficient as a matter of law, and

argues further that plaintiff's claims are procedurally barred by virtue of his failure to exhaust available administrative remedies before commencing suit.  In a separately filed motion the remaining four defendants, all employed at the Franklin Correctional Facility ("Franklin"), similarly maintain that the evidence fails to disclose their deliberate indifference to any serious medical need and also advance failure to exhaust as a procedural basis for dismissal of plaintiff's claims.

Having carefully considered the record now before the court, I recommend that both motions, which plaintiff has failed to oppose, be granted, and that his complaint be dismissed in its entirety.

I.    BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  *See generally,* Amended Complaint (Dkt. No. 16).  Plaintiff's claims arise from his care and medical treatment while at Coxsackie, where he was confined between June 16, 2005 and February 9, 2006, and later at Franklin, into which he was transferred from Coxsackie.  *Id.*; *see also* Wheeler Aff. (Dkt.

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences draw and ambiguities resolved in favor of plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV 134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007)(citations omitted).

No. 6-8) ¶ 6; Montroy Aff. (Dkt. No. 118-9) ¶ 5 and Exh. A.

      1.    <u>Treatment at  Coxsackie</u>

Following his arrival at Coxsackie, plaintiff was determined to have a low testosterone level, based upon a review of records received from a correctional facility in which he was previously confined.  Wheeler Aff. (Dkt. No. 6-8) ¶ 8.  Concluding that it was necessary to examine plaintiff's pituitary gland, which functions to secrete hormones and regulate and stimulate other endocrine glands, including the testicles, medical personnel at Coxsackie sought and obtained plaintiff's approval  for examination and treatment by a specialist.  *Id.* ¶ 8 and Exh. A.

Plaintiff was subsequently seen in or about November of 2005 by Dr. James Desemone, an endocrinologist.  *Id.* ¶ 8 and Exh. B.  While Dr. Desemone initially recommended magnetic resonance imaging ("MRI") testing of Calderon's pituitary gland in order to rule out any mass which could account for the low testosterone readings, it was determined that in light of residual metal in his left leg resulting from a gunshot wound, MRI testing would not be appropriate, and a computed axial tomography ("CAT") scan was instead ordered in its place.  *Id.*  A CAT scan was subsequently conducted on or about February 8, 2006.  Wheeler Aff. (Dkt.

No. 6-8) ¶ 8.  After reviewing the results of that testing, medical personnel ruled out any pathology associated with the pituitary gland.  *Id.*

At the time of plaintiff's transfer out of Coxsackie and into Franklin, his reported testosterone level was 149, which is outside of the normal range of between 241 and 827.  Wheeler Aff. (Dkt. No. 6-8) ¶ 8.  A reading taken four days later, on February 14, 2006, at Alice Hyde Hospital in Malone, New York , however, revealed a normal testosterone level of 269.  *Id.*

While at Coxsackie, plaintiff also complained of a lesion on his right buttock.[2]  Wheeler (Dkt. No. 6-8) ¶ 10; Montroy Aff. (Dkt. No. 118-9) ¶ 6 and Exh. A at 2-5.  Plaintiff's lesion was attributed by medical personnel to hydrodentis suppurativa ("HS"), a disease which results from chronically infected sweat glands and over the years has caused plaintiff to experience a history of buttock sores.  Valerian Aff. (Dkt. No. 116-9) ¶¶ 3-4; *see also* Filippone Aff. (Dkt. No. 116-6) ¶ 8; Montroy Aff. (Dkt. No. 118-9) ¶ 6.  Such sores are normally treated conservatively, at least initially, through such means as the use of antibiotics and antifungals, both of

---

[2]      The evidence in the record is equivocal as to the size of plaintiff's lesion. While defendants maintain that it was nickel-sized, *see* Monteroy Aff. (Dkt. No. 118-119) ¶ 6, plaintiff asserts that it was the size of a lemon.  Amended Complaint (Dkt. No. 16) Attachment at p. 2.

which were provided to the plaintiff.  Wheeler Aff. (Dkt. No. 6-8) ¶ 10; Valerian Aff. (Dkt. No. 116-9) ¶¶ 3-4.

Because plaintiff's buttock lesion persisted despite treatment by medical personnel at Coxsackie, he agreed to undergo general surgery consultation and was seen on November 10, 2005 for that purpose. Wheeler Aff. (Dkt. No. 6-8) ¶ 10.  As a result, surgery, comprising of an incision and drainage of the buttock lesion, was scheduled, and was subsequently performed on February 23, 2006 at the Albany Medical Center by Dr. Brian Valerian, following his transfer into Franklin.  Wheeler Aff. (Dkt. No. 6-8) ¶ 10; Valerian Aff. (Dkt. No. 116-9) ¶ 5.

### 2.   Treatment at Franklin

Upon his transfer into Franklin, plaintiff was admitted to the prison infirmary.  Montroy Aff. (Dkt. No. 118-9) ¶ 8 and Exh. A at. 6-7.  Calderon was examined on the following day by Dr. Gerald Cahill, a prison physician, and placed on resident status in the infirmary pending his scheduled surgery.  *Id.* at ¶ 8 and Exh. A at 9.

The bulk of plaintiff's indifference claims against medical personnel at Franklin surround his post-operative care and treatment.  Plaintiff maintains that defendants McIntosh and Pepin discontinued their practice

of changing the dressing on his incision and ignored the potential for infection, additionally delaying referral of the plaintiff to a doctor for examination.  Amended Complaint (Dkt. 16) ¶ 6 and Attachment at pp. 3-5.

The post-operative instructions received at Franklin at the time of plaintiff's return from the Albany Medical Center included a directive for wet-to-dry ("WTD") dressing changes to his right gluteus twice daily; those instructions were noted in plaintiff's admission record at Franklin, as well as in his ambulatory health records ("AHR").  Montroy Aff. (Dkt. No. 118-9) ¶ 9 and Exh. A at 10-11, 18.  Plaintiff was again examined the day after his return to Franklin by Dr. Cahill, who discharged him from the infirmary and placed him on "resident status", indicating that while he would remain housed in the infirmary, intensive medical care was not required.  *Id.* at ¶ 10 and Exh. A at 11.  Following his examination, Dr. Cahill ordered Calderon's dressing changes decreased to once daily, effective on the day of his examination.  *Id.* at ¶ 11 and Exh. A at 11.

Defendant Pepin, a registered nurse employed at Franklin, effectuated plaintiff's WTD dressing change without incident on the first two days following his surgery.  Pepin Aff. (Dkt. No. 118-3) ¶¶ 14-15.

After that, however, Calderon requested that his dressing change occur at 2:00 p.m. each day, following his shower which was routinely taken at 1:30 p.m.  *Id.* ¶ 15.  That request was denied in light of the fact that a dressing change at that time would not conform to prison policy concerning the scheduling of such procedures.[3]  Montroy Aff. (Dkt. No. 118-9) ¶ 12-14, 16; Pepin Aff. (Dkt. No. 118-3) ¶¶ 12-15.   Accordingly, plaintiff refused offers by prison medical personnel to effectuate bandage changes during the time period between February 27, 2006 and March 22, 2006, with the exception of one occasion on March 13, 2006, when he allowed Nurse Pepin to change his dressing.[4]  Montroy Aff. (Dkt. No. 118-9) ¶ 17; Pepin Aff. (Dkt. No. 118-3) ¶ 16.  Following each refusal Nurse Pepin provided Calderon with bandaging materials, comprised of four inch by four inch square gauze pads and tape to secure it in place, to permit him to change the dressing himself.  Pepin Aff. (Dkt. No. 118-3) ¶ 16 and

---

[3]      In his complaint plaintiff asserts that defendant McIntosh, another registered nurse at Franklin, refused his requests that she change Calderon's dressing.  Amended Complaint (Dkt. No. 16) ¶ 6.  Defendant McIntosh was assigned to work in the prison infirmary from 2:00 p.m. until 10:00 p.m.  McIntosh Aff. (Dkt. No. 118-12) ¶ 10; Montroy Aff. (Dkt. No. 118-9) ¶ 14.  Changing inmate dressings was not a part of McIntosh's assigned duties.  McIntosh Aff. (Dkt. No. 118-12) ¶ 10; Montroy Aff. (Dkt. No. 118-9) ¶ 14.

[4]      On that occasion Nurse Pepin observed that the debridement site appeared to be healing properly.  Pepin Aff. (Dkt. No. 118-3) p. 5, n. 1 and Exh. A at 22.

Exh. A at 19, 24; Exh. B.

Plaintiff was returned to general population at Franklin on March 22, 2006.  Pepin Aff. (Dkt. No. 118-3) ¶ 18 and Exh. A at 14.  On the following day Calderon was examined by Dr. Champagne, who observed little purulent drainage at the debridement site.  Pepin Aff. (Dkt. No. 118-3) ¶ 19 and Exh. A at 24.  Analysis of a culture subsequently taken on March 30, 2006, at the request of Dr. Champagne, yielded no evidence of infection.  *Id.* at ¶ 20 and Exh. A at 25.

A post-operative follow-up examination of the plaintiff was conducted on April 4, 2006 by Dr. Brian Valerian, the surgeon who performed the debridement procedure.  Pepin Aff. (Dkt. No. 118-3) ¶ 21 and Exh. A at 16.  As a result of his examination Dr. Valerian noted that the wound appeared to be healing adequately, and needed only to be cleaned with soap and water.  *Id.* ¶ 21 and Exh. A at 16.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on August 9, 2006, Dkt. No. 1, and with court approval filed an amended complaint, the operative pleading now before the court, on January 22, 2007.  Dkt. No. 16.  As defendants, plaintiff's amended complaint names Sandra A. Wheeler, a nurse

practitioner at Coxsackie; Wendy McIntosh and Donna Pepin, two registered nurses at Franklin; Lori Montroy, a nurse administrator at Franklin; and Jackie Coleman, a corrections officer at that facility. Amended Complaint (Dkt. 16) ¶ 13 and Attachment at pp. 5-6. Plaintiff alleges that each of the defendants was deliberately indifferent to his serious medical needs, denying adequate treatment for his conditions of concern, and additionally that defendant Coleman deprived him of bandaging materials and cream for his rash, as well as certain recreational opportunities. *Id.* ¶7 and Attachment at pp. 1-5. Issue was subsequently joined by the filing of answers by defendant Wheeler, who is separately represented, on April 17, 2007, Dkt. No. 37, and on behalf of the remaining four named defendants, on April 26, 2007, Dkt. No. 40.

On July 30, 2008, following the completion of pretrial discovery in the case, defendant Wheeler filed a motion seeking the entry of summary judgment dismissing plaintiff's claims as a matter of law. Dkt. No. 116. That motion was followed by a similar motion for summary judgment, filed on July 31, 2008, on behalf of the remaining four defendants. Dkt. No. 118. Despite passage of the deadline for doing so, plaintiff has failed to submit papers in opposition to defendants' motions, which are now ripe for

determination and have been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

      A.    Plaintiff's Failure to Oppose Defendants' Motion

      Before turning to the merits of plaintiff's claims, a threshold issue to

be addressed is the legal significance, if any, of his failure to oppose

defendants' summary judgment motion, and specifically whether that

failure automatically entitles defendants to summary judgment dismissing

plaintiff's complaint.

      This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief requested
> therein, the non-moving party's failure to file or serve any
> papers as this Rule requires shall be deemed as consent
> to the granting or denial of the motion, as the case may
> be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions.  *See*

*Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997)

(McAvoy, C.J.).  Despite this measure of deference, the failure of an

unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from deciding the motion. *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc*., 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motions, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statements unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), deeming facts set forth in a statement of material facts not in dispute to

have been admitted based upon an opposing party's failure to properly respond to that statement.[5]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertions of facts as set forth in their Local Rule 7.1(a)(3) Statements as uncontroverted, in light of Calderon's failure to respond to those statements, when reviewing defendants' motions for facial sufficiency.

### B.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

---

[5]      Local Rule 7.1(a)(3) provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3)(emphasis in original).

of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking the entry of summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at

14

2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

    C.    <u>Exhaustion of Remedies</u>

In both motions, defendants urge plaintiff's failure to file and pursue to completion grievances regarding the subject of his complaint before filing suit as a threshold, procedural basis for dismissal of his claims.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being

16

haled into courtl[,]" and to improve the quality of inmate suits filed through

the production of a "useful administrative record."  *Jones v. Bock,* 549

U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see*

*Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122

S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion

requirement is not jurisdictional, but instead gives rise to a defense which

must affirmatively be raised by a defendant in response to an inmate suit.[6]

*Jones,* 549 U.S. at 212*,* 127 S. Ct. at 919.  In the event a defendant

named in such an action establishes that the inmate plaintiff failed

properly to exhaust available remedies prior to commencing the action, his

or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-

0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.);

---

[6]      In their answers, defendants have all asserted failure to exhaust as an
affirmative defense.  *See* Wheeler Answer (Dkt. No. 37) ¶ 6; Montroy *et al.* Answer
(Dkt. No. 40) ¶ 9.

*see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007)(citing *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance

Review Committee ("IGRC") within twenty-one days of the incident.[7]   7

N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and

facility employees, then issues a determination regarding the grievance. 7

N.Y.C.R.R.  §§ 701.4(b), 701.5(b).  If an appeal is filed, the

superintendent of the facility next reviews the IGRC's determination and

issues a decision.  7 N.Y.C.R.R. § 701.5(c).  The third level of the process

affords the inmate the right to appeal the superintendent's ruling to the

Central Office Review Committee ("CORC"), which makes the final

administrative decision.  7 N.Y.C.R.R. § 701.5(d).  Ordinarily, absent the

finding of a basis to excuse non-compliance with this prescribed process,

only upon exhaustion of these three levels of review may a prisoner seek

relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

     The record discloses that plaintiff, though familiar with the IGP, did

not file any grievances while at Coxsackie related to the care and

treatment received at that facility.  *See* Defendant Wheeler's Local Rule

7.1(a)(3) Statement (Dkt. No. 116-10) ¶ 35; *see also* Killar Aff. (Dkt. No.

---

     [7]     The IGP supervisor may waive the grievance timeliness requirement due
to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

116-7) ¶ 4.  Plaintiff's claims against defendant Wheeler are therefore unexhausted, and his failure to file and pursue to completion a grievance regarding her actions warrants dismissal of all claims against her on this procedural basis alone.

The record discloses that plaintiff did file a grievance at Franklin on April 5, 2006, complaining of the failure of unspecified medical staff personnel at that facility to change bandages on his debridement site. Montroy Aff. (Dkt. No. 118-9) ¶ 21 and Exh. B; Bellamy Aff. (Dkt. No. 118-6) ¶¶ 10-12 and Exh. B.  The grievance was denied at the facility level, and that determination was upheld on review by the CORC on May 24, 2006.  Montroy Aff. (Dkt. 118-9) ¶ 24 and Exh. B.  Plaintiff did not, however, file any grievances while at Franklin related to certain other matters alleged in his complaint or discussed during his deposition, including denial of access to a medical doctor, the issuance of a false misbehavior report by defendant McIntosh, the actions of defendant Coleman in denying him recreation, a wheelchair, hydrocortisone cream, and/or hot packs, and turning off the water in his shower and removing sugar from his morning meal, or interference by defendant Coleman with plaintiff's medical treatment, nor did he grieve the failure of Nurse

McIntosh to provide him with prescribed medications prior to end of her shift.  *See* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 118-2) ¶ 64.

Accordingly, while plaintiff's claim related to the failure to change his bandages while at Franklin is properly preserved, the balance of his claims against defendants arising from actions at Coxsackie and Franklin are subject to dismissal for failure to exhaust available administrative remedies.

### D.    Merits of Plaintiff's Medical Indifference Claims

In their motions defendants have challenged the merits of plaintiff's medical indifference claims.  Both challenge plaintiff's contention that subjectively, they exhibited deliberate indifference to his medical needs, defendant Wheeler focusing on the period while Calderon was incarcerated at Coxsackie, with the remaining defendants challenging the claim of indifference by medical officials at Franklin.  Defendant Wheeler's Memo of Law (Dkt. No. 116-11) pp. 5-9; Defendants' Memo of Law (Dkt. No. 118-17) pp. 2-4.  In addition, defendant Wheeler argues that as a matter of law the medical conditions of which plaintiff complained while at Coxsackie were not sufficiently serious to warrant protection under the

Eighth Amendment.  Defendant Wheeler's Memo of Law (Dkt. No. 116-11) pp. 2-4.

###### 1.   Eighth Amendment Principles Generally

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S.97, 103, 104, 97 S. Ct. 285, 290-291 (quotations and citations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle,* 429 U.S. at 103, 97 S. Ct. at 290).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of

view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

a)   <u>Serious Medical Need</u>

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be

unconstitutional, depending on the facts. *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702). Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

b)   Deliberate Indifference

In addition to establishing the existence of a serious medical need, to prevail on an Eighth Amendment claim challenging the care and treatment provided for by a defendant must prove deliberate indifference. *Leach*, 103 F. Supp.2d at 546. Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*, 511 U.S. at

837, 114 S. Ct. at 1979); *Waldo*, 1998 WL 713809, at *2 (same).

It should be noted that the Eighth Amendment does not afford

prisoners a right to medical treatment of their choosing; the question of

what diagnostic techniques and treatments should be administered to an

inmate is a "classic example of a matter for medical judgment" and

accordingly, prison medical personnel are vested with broad discretion to

determine what method of care and treatment to provide to their patients.

*Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703

(citation omitted); *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264

(W.D.N.Y. 1998) (citation omitted).

2.    Medical Treatment While At Coxsackie

Plaintiff complains of his treatment of two distinct and seemingly

unrelated medical conditions while at Coxsackie.  First, he complains of

low testosterone levels which, he asserts, resulted in discoloration of his

penis and erectile dysfunction ("ED").[8]  Amended Complaint (Dkt. No.16)

Attachment pp. 1-2.  Nothing currently contained in the record reveals that

---

[8]    Plaintiff's attribution of his ED and discolored penis to documented low testosterone levels is not medically supported by any competent evidence in the record, and indeed Dr. Nicholas Filippone, M.D., a board certified staff surgeon at Nathan Littauer Hospital, in Gloversville, New York, has given an affidavit in this case establishing that low testosterone levels and ED are wholly unrelated medical conditions.  *See* Filippone Aff. (Dkt. No. 116-6) ¶¶ 1, 4.

plaintiff's low testosterone levels constituted a condition of urgency which could result in degeneration or extreme pain. *See* Filippone Aff. (Dkt. No. 116-6) ¶ 11.

The other condition experienced by plaintiff while at Coxsackie is a soft tissue infection on one of his buttocks, secondary to his diagnosed HS, a chronic condition of the sweat glands.  Amended Complaint (Dkt. No. 16) Attachment pp. 2-6; Valerian Aff. (Dkt. No 116-9) ¶¶ 3-4; Filippone Aff. (Dkt. No. 116-6) ¶ 8; Montroy Aff. (Dkt. No. 118-9) ¶ 6.  Once again, the record fails to disclose any evidence from which a reasonable factfinder could conclude that the condition was such that, if left untreated, it would cause death, degeneration or extreme pain, and in fact Dr. Filippone has opined to the contrary.  *See* Filippone  Aff. (Dkt. No. 116-6) ¶ 11; *see also Chance*, 143 F.3d at 702.  I therefore recommend dismissal of plaintiff's medical indifference claims stemming from his care and treatment at Coxsackie and the basis of his failure to establish the existence of a serious medical need.

Turning to the subjective element, a review of the available evidence, including plaintiff's medical records and an affidavit given by defendant Wheeler chronicling plaintiff's treatment, reveals that while at

Coxsackie he received considerable treatment for both of the medical conditions now in issue.  See Wheeler Aff. (Dkt. 116-8) ¶ 8).  Substantial measures were taken by medical personnel at Coxsackie to track the cause of Calderon's low testosterone levels, including by referral to an endocrinologist for consultation.  Wheeler Aff. (Dkt. No.116-8) ¶ 8.  The efforts to monitor and determine the source of plaintiff's low testosterone levels continued, and testosterone injections were ultimately ordered by Dr. Desemone on May 15, 2006, though well after his transfer out of Coxsackie.  *Id.*  From a review of the record of plaintiff's medical care while at Coxsackie, no reasonable factfinder could conclude that the defendants there were deliberately indifferent to his low testosterone level condition.

In addition to the treatment for low testosterone levels, the record establishes that while at Coxsackie plaintiff received adequate care for the lesion on his buttocks.  Plaintiff's lesion was generally treated through use of antibiotics, including Keflex 500 mg four times daily, resulting in healing though with some recurrence of lesions in other areas of the right buttock.  Wheeler Aff. (Dkt. No. 116-8) ¶ 10.  After agreeing to undergo surgical consultation and signing a consent form on October 25, 2005, plaintiff was

seen on November 10, 2005 regarding the condition.  *Id.* ¶ 10 and Exh. M.

After his transfer from Coxsackie, surgery was in fact subsequently

performed at the Albany Medical Center on February 23, 2006 by Dr.

Brian Valerian, who made an incision and drained plaintiff's right buttock

lesion.[9]  *Id.* ¶ 10 and Exh. N.

A careful review of the record discloses that while at Coxsackie,

plaintiff received adequate care and treatment of both his low testosterone

levels and his right buttock lesion.  Under these circumstances, I

recommend a finding that plaintiff cannot demonstrate subjective

deliberate indifference on the part of defendant Wheeler or any other

medical personnel at Coxsackie to his medical conditions, thus providing

another basis for dismissal of his Eighth Amendment claims arising out of

his care of treatment at that facility.

3.   Medical Treatment While At Franklin

A careful review of the record now before the court, including

plaintiff's medical records, similarly fails to reflect any denial of treatment

or indifference to plaintiff's medical needs during the period of his

---

[9]        It should be noted that the treating surgeon, Dr. Valerian, provided an affidavit stating that the use of antibiotics is an accepted method of treatment of the buttock condition from which plaintiff suffers.  *See* Valerian Aff. (Dkt. No. 116-9) ¶ 4.

confinement at Franklin.  *See generally* Montroy Aff. (Dkt. No. 118-9) ¶ 16

and Exh. A.  In this regard, plaintiff alleges that he was denied

hydrocortisone cream for a skin rash, *see* Amended Complaint (Dkt. No.

16) Attachment p. 6, and that he was refused the daily dressing changes

prescribed for the surgical site on his buttock.[10]  Initially, it should be noted

that as relates to treatment of his skin rash, plaintiff's allegations fall far

short of establishing the existence of a serious medical need.  *Hemmings*

*v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).  Similarly, addressing

Calderon's buttock lesion, as was previously discussed the evidence in

the record establishes that even if left untreated the condition would not

cause death, degeneration or extreme pain, and therefore fails to rise to

the level of cognizable serious medical condition worthy of Eighth

Amendment protection.

Addressing plaintiff's claim regarding alleged subjective indifference

of the defendants to his buttock lesion, the record discloses that when

plaintiff was transferred to Franklin on February 9, 2006 he was housed in

the infirmary and was scheduled to undergo a surgical procedure to

---

[10]     In an attachment to his amended complaint, plaintiff also suggests that defendant Coleman denied him access to a wheelchair.  Amended Complaint (Dkt. No. 16) at p. 6.  Plaintiff's medical records show that while housed in the special housing unit ("SHU") at Franklin in July and September of 2006, plaintiff did not require use of the wheelchair because he was not required to ambulate for any distance.

provide for drainage of the lesion.   Pepin Aff. (Dkt. No. 118-3) ¶¶ 7-8.  As

noted above, that procedure was performed at the Albany Medical Center

on February 23, 2006 by Dr. Brian Valerian.  Following his surgery on

February 23, 2006, plaintiff was returned to the infirmary at Franklin.

Pepin Aff. (Dkt. No. 118-3) ¶ 9, 10.  On February 24 and 25, 2006,

defendant Pepin changed plaintiff's bandage from wet to dry.  Pepin Aff.

(Dkt. No. 118-3) ¶¶ 14-15.   Thereafter, however, plaintiff refused to allow

defendant Pepin to change his bandages as scheduled, instead insisting

that the procedure should be undertaken at his convenience.  *Id.*

In addition to care and treatment received from the nurse

administrator and registered nurses at Franklin, plaintiff's medical records

reveal that he was seen by Dr. Cahill on February 9, February 24, April 7,

May 19, June 13, June 27 and July 5, 2006, and by Dr. Champagne on

March 23, 2006. *Id.* at ¶ 25.  Plaintiff's medical records were also

periodically reviewed by Drs. Cahill and Champagne.  *Id.*  In addition, as

was previously noted, on April 4, 2006 plaintiff was sent for a post-

operative examination by Dr. Valerian.  *Id.* at ¶ 21.

As the foregoing reflects, despite plaintiff's protestations regarding

his treatment, the record fails to disclose any evidence from which a

reasonable factfinder could conclude that any of the defendants at Franklin were deliberately indifferent to his medical needs.

  D.  False Misbehavior Report

  In his second cause of action, which is focused upon the defendants assigned to work at Franklin, plaintiff alleges only deliberate medical indifference.  *See* Amended Complaint (Dkt. No. 16), Second Cause of Action.  In an attachment to his amended complaint, however, containing a more detailed factual recitation, plaintiff makes at least indirect reference to verbal harassment and the issuance by defendant McIntosh of a misbehavior report which, Calderon at least obliquely asserts, was false.  Amended Complaint (Dkt. No. 16) Attachment p. 4.  Anticipating that the court may determine that those allegations should be considered sufficient to warrant a finding that additional causes of action should be considered to have been asserted by the plaintiff, in deference to his *pro se* status, defendants also seek dismissal of those claims.[11]

  42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.  *Alnutt v. Cleary*, 913 F.Supp. 160, 165-66 (W.D.N.Y. 1996) (citations omitted).  Thus, mere allegations of verbal abuse do not rise to

---

  [11]  As was previously noted, neither of these claims was properly exhausted by the plaintiff.  *See* pp. 19-21, *ante*.

the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.  *See Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

Similarly, standing alone allegations of the issuance of a false misbehavior report are generally not sufficient to support a claim under section 1983.[12]  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988).

Under the circumstances, I therefore recommend that to the extent plaintiff's complaint could be liberally construed to raise claims regarding the issuance of false misbehavior reports and verbal harassment, those

_____

[12]     The further assertion that a false misbehavior report has been prompted by retaliatory animus and relates to an inmate having engaged in protected activity can, however suffice to state a claim for retaliation.  *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988).  Plaintiff's complaint makes no such allegation.

claims should be dismissed both procedurally as barred under the PLRA based upon plaintiff's failure to exhaust, and on the merits.

F.    Recreation

Although plaintiff's claims are characterized by him as alleging deliberate indifference, in the attachment to his amended complaint he alleges that defendant Jackie Coleman denied him any type of recreation during his three stays in the infirmary, including from February 4, 2006 until April 3, 2006; between July 4 and July 19, 2006; and from September 14, 2006 until September 29, 2006.  Amended Complaint (Dkt. 16) Attachment p. 6.

At the outset, I note that these allegations are contradicted, in significant part, by uncontested facts in the record.  By way of example, Coleman was employed at Franklin, where plaintiff was not housed until February 9, 2006.  *See* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. 118-2) ¶ 13.  Accordingly, Coleman could not have deprived plaintiff of recreation before that date.  Additionally, plaintiff was transferred to Albany Medical Center for minor surgery on February 23, 2006 and returned to the Franklin infirmary on the same day, where he was placed on resident status in the infirmary on February 24, 2006, but later returned

to general population on March 22, 2006 .  *Id.* at ¶¶ 15, 18, 40.  There is

no evidence in the record that plaintiff was housed in the infirmary, where

it is alleged that defendant Coleman works, during any other relevant time

period.  In July of 2006, plaintiff was transferred to Upstate Correctional

Facility, although he was returned to Franklin on September 14, 2006,

where he remained until September 29, 2006.[13]  *See* Rock Dec. (Dkt. 118-

14) Exh. B pp.113-117.

Whether the denial to a prison inmate of exercise rises to a level of

constitutional significance depends upon the circumstances including,

importantly, the duration of the deprivation and specifically whether the

inmate has been denied "all meaningful exercise for a substantial period

of time."  *Williams v. Goord,* 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001).

Deprivations of exercise for limited periods have been found in several

instances not to support a constitutional claim under the Eighth

Amendment.  *See, e.g., Arce v. Walker*, 907 F. Supp. 658, 662

(W.D.N.Y.1995)(Eighth Amendment violated by deprivation of out-of-cell

---

[13]     Upstate is a maximum security prison comprised exclusively of special
housing unit ("SHU") cells in which inmates are confined, generally though not always
for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No.
01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

exercise for eighteen out of nineteen days), *rev'd on other grounds*, 139 F.3d 329 (2d Cir. 1998); *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997)(denial of outdoor exercise for fourteen days did not represent cruel and unusual punishment).

The undisputed evidence contradicts plaintiff's allegations of deprivation of recreation.  As was noted above, there is no evidence that plaintiff was confined to the infirmary for all the time periods alleged.  In addition, plaintiff's medical records show that he was not released by a physician to exercise until April 4, 2006.  Accordingly, any deprivation of exercise between February 9, 2006 and April 4, 2006 was medically indicated.   The record also reveals that plaintiff was transferred into Upstate in July of 2006, and did not return until September 14, 2006.  Plaintiff's medical records also show that while plaintiff was in SHU in July, he was "unable to ambulate across the gym yard bubble to work out."

In short, even when construing plaintiff's amended complaint broadly to encompass an Eighth Amendment claim against defendant Coleman, at best it is premised upon two separate brief deprivations of recreation while he was in SHU which, as a matter of law, are insufficient to support a claim of cruel and unusual punishment.    Under the circumstances, I

therefore recommend that to the extent plaintiff's complaint can be liberally construed to include a claim for deprivation of exercise, this claim be dismissed both procedurally as barred under the PLRA based upon plaintiff's failure to exhaust,[14] and on the merits.

IV.   SUMMARY AND RECOMMENDATION

At the heart of plaintiff's complaint in this action is his dissatisfaction with medical treatment of two conditions, one allegedly involving low levels of testosterone and the other a diagnosed condition causing infections and lesions in the area of his buttocks, while confined at both Coxsackie, and later at Franklin.  The record discloses, however, that neither of those conditions is sufficiently serious to qualify for protection under the Eighth Amendment, and that, in any event, Calderon received considerable and adequate care and treatment for both conditions from the medical personnel at Coxsackie and Franklin, as well as through outside consultation.  The record further establishes that with one exception, all of plaintiff's claims remain unexhausted, and plaintiff is therefore procedurally barred by the relevant provisions of the PLRA from pursuing

---

[14]      Plaintiff testified at his deposition that he filed a grievance with respect to the alleged denial of recreation.  *See* Rock Decl. (Dkt. No. 118-14) Exh. B p. 119. Defendants have convincingly established, however, that plaintiff filed only one grievance while housed at Franklin, FKN 6985-06, alleging medical indifference by staff at Franklin.  Bellamy Aff. (Dkt. 118-6) ¶¶ 11-13.

those claims in this action.[15]

In sum, finding that plaintiff's claims are for the most part procedurally barred, and in any event lack merit, and that no reasonable factfinder could conclude that defendants violated his constitutional rights, I recommend that defendants' motion be granted.   Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motions for summary judgment (Dkt. Nos. 116, 118) be granted, and that plaintiff's claims in this action be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this

---

[15]     In light of these findings I have not addressed defendants' additional arguments of lack of personal involvement, Eleventh Amendment immunity with regard to defendants' liability in their official capacities, and qualified immunity.

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     March 30, 2009
           Syracuse, New York